## UNITED STATES v. CHINTAN IMPORT CO.

No. 5634.—Invoice dated Hongkong, December 3, 1936.
Entered at Honolulu, T. H., December 28, 1936.
Entry No. 2041.

(Decided May 11, 1942)

*Paul P. Rao*, Assistant Attorney General (*John J. McDermott, Richard F. Weeks, James F. Donnelly*, and *Samuel D. Spector*, special attorneys), for the plaintiff.
*Lawrence & Tuttle* (*Frank L. Lawrence, George R. Tuttle*, and *Charles F. Lawrence* of counsel), for the defendant.

DALLINGER, Judge: This collector's appeal to reappraisement involves the question of the dutiable value of certain canned fish and other merchandise imported from China and entered at the port of Honolulu, Hawaii, in December, 1936, and which was appraised as invoiced and entered.

At the first hearing, held at Honolulu on May 18, 1938, before Evans, Judge, the Government offered in evidence the testimony of William Irwin Stearns, who testified that from 1935 to 1937 he was a United States examiner of merchandise in the appraiser's office at the port of Honolulu in charge of Chinese importations; that in that capacity he passed the merchandise at bar; that he appraised the same at the invoice price; and that subsequently he made an investigation. On being asked to describe the nature of his investigation, counsel for the plaintiff objected. The trial judge overruled the objection, whereupon the witness proceeded to testify in part as follows:

The WITNESS. The merchandise is Chinese merchandise imported by the Chintan Import Company. There were five different importations. As I recall now, there were about five importations. I suspended the invoice and entered values because of the entry of comparable merchandise being imported on the basis of prices approximately ten per cent higher. Based upon that assumption, that an undervaluation existed, I visited the importer's premises * * * and had the importer submit his private bills to me. The private bills indicated an undervaluation of 10 per cent throughout. On the basis of those private bills, I recommended the appeal. * * *

*      *      *      *      *      *      *

Q. Do you have a translation of the figures and invoices submitted by the importer?—A. The translator effected translations of the private bills. That is the Chinese official translator did. * * * I have the Chinese original private bills in the Chinese vernacular, and can produce them at any time.

The Government having rested, the importer offered in evidence the testimony of Warde C. Hiberly, assistant collector of customs at the port of Honolulu since October 1, 1937, who testified in part as follows:

Q. Did you have anything to do with any compromise which had been negotiated between the importer and the Secretary of the Treasury involving a settlement of a controversy between the importer and the Government relative to imported merchandise?

* * * * * * *

A. I did.

By Mr. Lawrence.

Q. Was a compromise entered into?

* * * * * * *

A. A compromise was entered into, only in so far as seizure was concerned.

* * * * * * *

Q. Have you any documents showing the compromise of that seizure?—

* * * * * * *

A. Yes.

Q. Are these the papers you handed me the other day?—A. Yes.

Q. Do they relate to the merchandise covered by the present proceedings?—A. Yes.

[At this juncture, a file of the correspondence in question was received and marked Collective Exhibit 1.]

Q. Was a compromise actually made by the importer in this matter?

* * * * * * *

A. A compromise was made.

Q. Of $1,081? Was that the amount for which the compromise was made?—A. On all the entires that were made.

Q. Part of that amount related to Entry 2041, which is the entry covered by this appeal?—A. Yes, sir.

* * * * * * *

Q. It was in settlement of a civil liability?—A. For the seizure, yes.

At the conclusion of this testimony the case was submitted by both sides, time being allowed counsel for briefs.

Subsequently, to wit, on October 13, 1938, on motion of counsel for the plaintiff, the submission of the case was set aside; and at the second hearing, held at San Francisco on October 14, 1940, before Evans, Judge, the following colloquy took place:

Mr. Weeks. In this case, a motion to take a commission has been filed.

Judge Evans. To take testimony where?

Mr. Weeks. In Honolulu. I submitted the motion for commission on five days' notice in order to lay the foundation for admission of certain documents in evidence which my colleague determined was necessary in this case, and for the

purpose of which we secured a rehearing and had the case reopened. There was a private invoice found in the place of business of the importer which, we believe, supports the action of the Collector, who filed this appeal for reappraisement.

There being no objection, the motion was granted. Also, on motion of counsel for the importer, without objection, the court ordered the original entry to be included as part of the official papers in the case.

At the third hearing, held at San Francisco on June 24, 1941, before Walker, Judge, the following colloquy took place:

Mr. DONNELLY. That is a collector's appeal to reappraisement, and while the case has appeared on the calendar 3 times, I nevertheless ask for a continuance on behalf of the Government, inasmuch as there are several matters concerning which I have not been advised.

At the last hearing the Government moved for a commission to take the testimony of two Government officials in the Port of Honolulu, and from an examination of the court papers I do not see where the commission was ever executed or interrogatories ever prepared.

I have been unable to ascertain why such action was not taken, and in the absence of such information I do not at this time feel ready to proceed.

Mr. TUTTLE. The case was first heard in Honolulu in May, 1938, your Honor, and it appeared on San Francisco dockets.

In the Fall of 1940, in San Francisco, Government counsel who attended that docket filed a motion for commission. Motion was granted. His interrogatories were to have been filed within 30 days. That was in the Fall of 1940. Since then the case appeared on the February, 1941 calendar, and no interrogatories had been filed.

Mr. Donnelly is unable to file them, of course, here, but * * * I think perhaps the court should fix some limit as to how long the Government has to file these interrogatories, that is, grant Mr. Donnelly's request for a continuance of one docket, but require that the interrogatories be filed before that time.

Mr. DONNELLY. I have no objection to such an order.

Judge WALKER. I will make that order, with the understanding that if something hasn't been done by that time that somebody is out of luck.

Mr. DONNELLY. All right.

Do I understand that the court's order directing the execution of the interrogatories still stands? The Government may be in default under the terms of the motion. I believe the motion called for the filing of interrogatories within 60 days after granting the order.

Now, as I say, I don't know whether they were ever filed. It would appear from their absence in the court papers they were not filed.

Judge WALKER. My order isn't restoring the status if it is already outlawed, but I will continue it until we find out just exactly what the position of the case is.

Mr. DONNELLY. All right.

Judge WALKER. But I am not granting any time to the Government or anybody else to file interrogatories.

At the fourth and last hearing, held at San Francisco on November 24, 1941, the following colloquy took place:

Mr. SPECTOR. This case has been partly tried and evidence taken. At this time the Government offers in evidence an affidavit executed by William I. Stearns, examiner of customs at the port of Honolulu.

Mr. TUTTLE. This affidavit was made by William I. Stearns, an examiner at Honolulu, and it states that he visited the premises of the importer and asked

to see his private invoice which was shown to him, and he found that this private invoice gave a higher value than the consular invoice, and that in his opinion, based upon his work as an examiner, the invoice value, that is the consular invoice value, is too low. I object to the affidavit going into evidence on the ground there is no evidence contained therein as to the price at which such or similar merchandise was freely offered in the principal markets at the time of exportation of this merchandise. In addition to that, this same witness was called by the plaintiff at Honolulu on May 18, 1938, and testified in this case. I believe that Section 501 provides for the admission of affidavits of persons whose attendance cannot be reasonably had and in this case the person who executed this affidavit did appear before this court and testified in this case. But because he failed to give certain testimony at that time, I don't believe Section 501 contemplates the admission of affidavits for such purpose. And I want to further point out to the court that two or three dockets ago a motion was made by the Government to take the deposition of this man but no interrogatories were filed. Thereafter, at the next docket, the motion was renewed and it was again granted and time was given for the filing of interrogatories but again no interrogatories were filed. It seems to me that if testimony or the admission of testimony was to be considered proper in this case, the way to offer it would be by deposition.

Mr. SPECTOR. I think the proper way to handle this case is to have it go back to Honolulu for trial. That is the proper thing to do. We did ask for this case to go back to Honolulu for trial but that motion was denied so we have had to do the next best thing and submit affidavits. I have three of them that I am going to offer.

Mr. TUTTLE. I will show the court the record where the last motion was made for a deposition in this case.

Judge DALLINGER. Why didn't you go ahead with the deposition?

Mr. SPECTOR. I don't know; I didn't handle that part of the case. We have affidavits now and we are ready to submit on them. I think the proper thing to do is to send the case back to Honolulu.

Mr. TUTTLE. We made no objection to the motions for the deposition.

Judge DALLINGER. Well, I don't think there is any need to delay this proceeding any further so what I shall do is to admit all of these affidavits for identification, as exhibits for identification. This case will come before me for decision so I will reserve ruling on their admissibility. I will take the whole situation under advisement and ask for briefs on the entire question.

The affidavits were then marked as exhibits 2, 3, and 4, respectively, for identification only.

The case was then submitted by both sides, 60 days being allowed concurrently within which counsel may file briefs.

The sole question before me for decision is whether the Government has sustained the burden of proof resting upon it to show (1) that the value found by the appraiser was erroneous; and (2) that some other value was the proper duitable value of the merchandise. In my opinion the Government has failed to sustain that burden.

I am strongly of the opinion that considering the long history of this case before this court that the exhibits 2, 3, and 4, marked for identification at the last hearing, should not as a matter of law be admitted in evidence herein. Under the provisions of section 501 of

the Tariff Act of 1930 reports of special agents as such are admissible in evidence if relevant. But this is not true of affidavits. Both the Government and the importer are bound by the statutory provision that such affidavits are admissible only where the attendance of the affiants as witnesses could not reasonably be had.

At the first hearing, held at Honolulu, William I. Stearns, one of the affiants named in said affidavits, appeared as a witness and testified at length. Also, at that time, the Government had every opportunity to summon its Chinese interpreter, Peace Yin Ping Tan, as well as Charles W. Beers, a clerk in the office of the United States Appraiser of Merchandise at Honolulu, to produce all necessary papers and translations. Having failed to do this, at a subsequent hearing in San Francisco, without objection on the part of counsel for the importer, a motion made by counsel for the Government to take the deposition of two of the Government officials at the port of Honolulu was granted and 60 days allowed within which to file interrogatories. Apparently no interrogatories were filed, and at a third hearing Government counsel was given until the next San Francisco docket within which to file said interrogatories, but they were not filed.

At the fourth hearing, held before me, counsel for the Government suggested that the case be retransferred to Honolulu, a similar motion having previously been denied by another judge.

Under these circumstances, although exhibits 2, 3, and 4 for identification ought not to be, and are not, admitted by me in evidence herein, nevertheless, even if they were admitted I am of the opinion that they would have no probative value. As aptly stated by the United States Court of Customs and Patent Appeals in the recent case of *United States* v. *Manahan Chemical Co.*, 24 C. C. P. A. 53, 62, T. D. 48333:

* * * It is true that an invoice, under certain circumstances, may be considered in the appraisal of merchandise, but an invoice cannot of itself establish statutory elements necessary to constitute foreign or export value of merchandise.

The mere fact that the private invoice shown by this importer to Government officials called for a value 10 per centum higher than the invoice value which had been accepted by the appraiser, is of no probative value, it being incumbent upon the Government to prove that there was a value at which such or similar merchandise was freely offered for sale to all purchasers in the principal markets of Indo-China in the usual wholesale quantities and in the ordinary course of trade, different from the value found by the appraiser. This the Government has utterly failed to do.

The appeal is therefore dismissed and judgment will be rendered accordingly.